**RIPPLE SOLE CORPORATION, Plaintiff, Appellant,**

v.

**AMERICAN BILTRITE RUBBER CO., Inc., Defendant, Appellee.**

No. 5848.

United States Court of Appeals
First Circuit.

May 3, 1962.

---

Edwin J. Balluff, Detroit, Mich., with whom Benjamin W. Colman, Southfield, Mich., Irving U. Townsend, Jr., Boston, Mass., Balluff & McKinley, Detroit, Mich., and Emery, Booth, Miller & Townsend, Boston, Mass., were on the brief, for appellant.

Melvin R. Jenney and Clarence S. Lyon, Boston, Mass., with whom Richard R. Hildreth and Kenway, Jenney & Hildreth, Boston, Mass., were on the brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

This is an appeal from a judgment dismissing a complaint for infringement of all three claims of United States Patent No. 2,710,461 for Resilient Shoe Soles issued to Nathan Hack on June 14, 1955. Claim 1 of the patent reads:

"A resilient shoe sole formed with a series of spaced parallel resilient projections extending transversely of said shoe sole and at right angles to the length thereof, said projections being inclined rearwardly, whereby weight thereon causes a straight forward movement of the sole as said projections yield under weight."

Claim 2 adds that the transverse downwardly extending parallel projections have "tapering and rounded ends" and Claim 3 further adds that the sides of the projections diverge "upwardly to a rounded juncture with the body of said sole."

Hack conceded in the specification of his patent that there are many kinds of shoe soles "designed to give a springing action as the shoe moves down onto the supporting surface." And in that connection he specifically refers to soles having undulations or corrugations "in a straight vertical position." His assertion is that by inclining the transverse resilient ribs or corrugations "rearwardly from the sole of the shoe * * * a certain forward movement is imparted to the foot" as it strikes the floor or pavement[1] because the small rounded lower end of each resilient rib "fulcrums" on the floor as weight comes on the foot and the ribs tend to hinge forwardly as they flatten out. Stated in different terms, the theory of Hack's patent is that weight on the sole causes the projections to pivot forward on their lower edges and that this pivoting forces the shoe forward with each step. He says that the wearer of shoes equipped with his soles has the feeling of walking on air and enjoys an increase in the length of each step by the amount of the forward movement of the shoe as it strikes the floor, thereby saving energy because fewer steps are required to progress a given distance. And he says that this "forward propulsion," as he calls it, is unique in the art of shoe making and constitutes a significant advance (perhaps we should say "step forward") in that ancient art.

The District Court did not agree. It found after thorough trial at which experts for both parties testified at length that the Hack structure did not produce the advantages claimed for it, at least to any significant extent. More specifically it found that the plaintiff had not shown that the patented structure substantially increased the wearer's stride or that any advantage by way of saving energy or otherwise resulted from any in-

---

[1]. He does not claim that there is any forward movement of the foot when walking on a soft surface.

crease in stride that it might produce, or that any increase in comfort or reduction of shock, and consequent fatigue in walking, was due to the structure rather than to the cushioning effect which might be produced by any sole of similar resilience. Furthermore the court found that the Hack patent was clearly anticipated by French patent No. 902,385 issued to Madame Lacoste in 1945.

Obviously the District Court was not persuaded by the testimony of the plaintiff's expert witness and the tests upon which he relied but on the contrary found the testimony of the defendant's expert based on his tests more convincing. The court conceded that the plaintiff's rocking test, wherein a person wearing shoes with Hack soles stands with his feet together on a smooth hard surface and shifts his weight alternately forward and backward, moved forward an appreciable fraction of an inch with each rocking motion. But it concluded that this test did not truly simulate walking because there was no forward momentum of the body. Nor did it find tests conducted by the plaintiff's expert on a treadmill convincing. The most that the court found was that giving the Hack structure the benefit of every doubt it might add as much as $\frac{9}{10}$ths of an inch to each stride. But it also found that an actual walking demonstration by the defendant's expert showed that a shoe with a resilient heel but an ordinary sole would add about $\frac{3}{8}$ths of an inch to the stride.

Nor did the court find that the Hack soles had any practical advantage in that a wearer of the soles could walk with less expenditure of effort. The parties agreed that the amount of human energy expended can best be measured by tests determining the amount of oxygen consumed. And on the basis of such tests conducted by the experts for both parties the court concluded that there was no significant difference in the oxygen consumption of persons walking on Hack soles and persons walking on soles of other kinds.

On the basis of these findings the court concluded that it could not find that the Hack structure produced the advantages claimed for it to any appreciable extent. In summarizing the court said that it did not appear that the Hack structure substantially increased the wearer's stride or resulted in any advantage, by way of saving energy or otherwise, from any increase in stride it might produce. And the court added: "It cannot be found that any increase in comfort or reduction in shock and fatigue is due to its peculiar structure rather than to the cushioning effect which would be produced by any sole made of similar resilient material."

A careful scrutiny of the testimony and the exhibits discloses ample evidence to support the District Court's findings of fact. Indeed, we think its findings, instead of possibly being clearly erroneous, are clearly correct. And on those findings the conclusion, be it one of fact or of law, of lack of invention is inescapable, for the most that can be said for the Hack structure is that it is but a "trifling device" contributing little if anything to the "real advancement" of the art to which it pertains. See Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 27 L.Ed. 438 (1882).

Nor can the commercial success of the structure save it, if for no other reason, because there is no evidence that its success was due to its intrinsic merit rather than to the extensive advertising campaign with which it was launched in the market. In fact, the evidence is clear that it failed permanently to capture any substantial segment of the shoe sole market, that the commercial success it enjoyed was only short lived, which supports the District Court's conclusion that the most probable explanation for its commercial success is that its novel appearance made it catch on as a fad or temporary style.

We also agree that the patent in suit was anticipated by the French patent to Lacoste referred to earlier in this opinion. A detailed analysis and discussion of that patent, however, would not serve

any useful purpose in view of our conclusion that the court below was clearly correct in holding the Hack patent in its entirety invalid for lack of invention.

Judgment will be entered affirming the judgment of the District Court.